M. F. STROCK v. STEWART N. EAGLE ET AL., Appellants.—48 S. W. (2d) 851.

Division One, April 2, 1932.

*J. M. Wattenbarger* for appellants.

*Miles & Jayne* for respondent.

14

STURGIS, C.—The pleadings in this case make what the trial court denominated a "dead out suit for partition." The land sought to be partitioned is an improved residence lot in the city of Kirksville. This property belonged to plaintiff's wife, Drusilla E. Strock, in her lifetime and she died seized of the same not long before this suit was instituted. Plaintiff claims a half interest in this property by reason of his being the surviving widower of Drusilla E. Strock, who died seized of the same without children or other descendants. It is not material whether plaintiff claims a half interest in this property of his deceased wife under Section 324, Revised Statutes 1929, or under Section 319, abolishing curtesy and giving the widower the same share in the real estate of his deceased wife that is provided by law for the widow in the real estate of her deceased husband, to-wit, one-half of the real and personal estate belonging to the wife (husband) at the time of her death, absolutely, subject to the payment of the wife's indebtedness, as provided in Section 325, Revised Statutes 1929. [See O'Brien v. Sedalia Trust Co., 319 Mo. 1001, 5 S. W. (2d) 74.] The deceased wife left a will, duly probated, making certain specific bequests and giving the rest of her property, including

that in controversy, to her living brothers and sisters, the defendants herein. They claim the whole of the property in dispute, a one-sixth each, under this will and ask partition on that basis. The court found for plaintiff, awarding him one-half and each defendant a one-twelfth. The defendants have appealed. The will of the deceased wife specifically gave the husband nothing and whether he was put to an election or not, he did in fact file a renunciation of the will and an election to take under the law and not under the will.

The defense which defendants make to allotting a one-half of this property to plaintiff as prayed is that plaintiff has relinquished such right and is estopped to claim under the statute giving the widower one-half of his deceased wife's real and personal property on her death without any children or other descendants in being capable of inheriting. The facts shown in support of this defense are that after their marriage, the wife of plaintiff, with her own money, purchased the lot in question and built a house thereon for a home, and that she and her husband lived therein for a number of years and were so living at her death. When the deceased wife purchased this lot she took a warranty deed in common form conveying the same to her and at the time there was inserted in said deed in the space following the description of the lot and preceding the *habendum* and warranty clauses, the following:

"M. F. Strock, husband of Drusilla E. Strock, does hereby acknowledge and agree that I have no right, title or interest in the above described real estate, and have no money invested in the same, and that I will not make claim to the same at any time, nor shall those claiming under me have any title or interest in the property above described.

"(Signed) M. F. STROCK.

"M. F. Strock hereby acknowledges the same to ——— my free act and deed. This 8th day of September A. D. 1922, before H. S. Lindsey, Notary Public. My commission expires Feby. 7, 1926.

"(Signed) HARRY S. LINDSEY, Notary Public."

This is the only mention of plaintiff's name in the deed and evidently was written at this place in the deed for mere convenience because of there being a sufficient blank space there. It has the same date and date of acknowledgment as the deed.

The defendants state their defense in their answer in this wise:

"Defendants aver and charge the facts to be that prior to the purchase by his said wife as aforesaid of said real estate, it was mutually agreed and understood by plaintiff and his said wife, that if the said Drusilla E. Strock would so purchase said property with her own private means and erect a dwelling thereon as aforesaid, thus providing plaintiff and his said wife a home in which they could live and prevent and relieve plaintiff from the obligation of paying rent on the properties in which they had previously lived as he had been

doing and as it was his duty to do under the law, as the husband of the said Drusilla E. Strock, that he, plaintiff, would waive and relinquish all his marital rights and interest in and to said property of said Drusilla E. Strock, claim no right nor interest whatever in the same and not allow anyone claiming under him to so claim.

"These defendants charge and are ready to verify, that in accordance with such understanding and in pursuance thereof, and believing and relying on plaintiff's agreement so to do, and not otherwise, she did so purchase said real estate and did pay for the erection of said dwelling and other improvements thereon all out of her own money and means, and that they did so occupy the said property thereafter as aforesaid.

"Defendants aver and charge that by reason of plaintiff's said declarations, acts and conduct, causing his said wife to so purchase said real estate and erect the improvements thereon, thus providing a home for them, all out of her own and exclusive and separate means, and whether there *was such an agreement or not*, then plaintiff is now and forever barred, precluded and estopped from claiming any right, title or interest whatever in said real estate."

At the trial the court gave defendants a wide range in introducing oral evidence over plaintiff's repeated objections. The evidence was to the effect that after the marriage of plaintiff to Drusilla, she bought this lot and built the house thereon wholly with her own money and that they used it as their home till her death. The lot cost about $800 and the house some $2,600, all paid by the wife. Defendant Elmer Eagle, brother of the deceased wife, testified that on one occasion the plaintiff said to him, "Well, I was talking to him about his money—I will explain it so you will understand—and he told me that he had nothing to do with it. He says, 'I expect nothing. I have nothing—that is our agreement— I have nothing coming on her property, nothing coming to me,' and he says, 'I thought I could do as I pleased with mine.' "

Another defendant and brother of the deceased wife testified that some two years before her death the plaintiff said to him: "It come up quite often that he said that he had no interest in her property whatever. He says, 'She is furnishing the home and that is hers and I try to furnish the eats.' And then the last time I talked with them —you will know whether it is so or not—he says, 'Billy, I am looking to my son Will and Mr. Davis to look after my interest. What do you think about it?' I said, 'Sure, it is alright.' He says, 'I tell you, Billy, I have no interest in her property whatever. She owns that herself.' That is all, that he didn't have no interest in it. Come up every once in a while. That was their agreement, yes. He said that, 'I don't own none of her property.' He said, 'That is our agreement.' He told it time and time again at our house."

Mrs. W. H. Eagle testified: "They most always did their talking together at our home because we were together. She was building the home. He said she was building the home; this was her own money, put it in her property, and of course he was to furnish the expense of the eats and furnish the home after it was built, you know, and he said, 'This is our agreement;' that 'I haven't any money in her home whatever.' Mr. Strock said that Mrs. Strock had paid for the property. She was buying the property and building her home, and he had no interest in it whatever. It was the agreement with them that she should build the home and he should furnish things, you know, after the home was built, and all like that, and that was about all."

Mrs. Fronia Applegate, a defendant and sister of the deceased wife, testified: "About six years ago plaintiff said to me: 'I want Dru to build that house to suit herself. She is furnishing it. I have nothing to say about it. I want it to please her for I have nothing in it. It is hers.' Then after that, after they were living in the house, he would come to our house almost every day and many times he said: 'Well, Dru is furnishing the home but I furnish the expenses. I keep out of my pension so much every month to pay the living expenses.' He said, 'That is our agreement.' "

Even if this oral evidence was competent, it is far from proving that prior to the purchase of this property by the wife and as an inducement to her to do so, plaintiff agreed that he would waive and relinquish all his marital rights and interest in this property; nor does it prove that the wife relied on any such agreement in purchasing the property and that she would not have done so otherwise. Her purchasing the property was purely voluntary on her part and for their mutual advantage. All the oral statements testified to were made after the property was so purchased and were not made to induce her to buy this property.

That this property was the wife's property is conceded and plaintiff bases his claim to a half interest on that fact coupled with the fact that she died without descendants capable of inheriting. This result came by operation of law. Certainly the husband conceded at all times that this property was hers, bought and paid for by her, and he had nothing in it and claimed and would claim no interest therein. Such expressions, however, had reference to the existing conditions and should not be construed, without more, to refer to such a radical change in ownership as would be brought about by the death of the then owner and when others, and not she, would be interested. The fact that an amicable arrangement was made by which the wife was furnishing the home and her husband the "eats" could work no estoppel as to the interest he would acquire at her death.

As to the written clause inserted in the wife's deed, but which was really a separate agreement or declaration by one not a party thereto, we think that such clause was intended to and did speak as of the then conditions. It was not intended to be a conveyance or release of a future acquired interest under the law relating to reciprocal dower. The trial court correctly ruled that such clause was only intended to estop plaintiff from claiming that such property was not the separate property of the wife and to prevent him from asserting that he had any personal or then present interest in or ownership of such property by reason of having furnished any part of the purchase price or otherwise. It was a solemn declaration that this was the wife's sole and separate property and that she would have a right to deal with it as such and dispose of it as hers, but necessarily under the law relating to married women's property. As such a declaration it would be binding on his heirs or persons claiming under him. This clause was not intended to release, convey or cut off the rights which the law gave to plaintiff as husband on his wife's death.

Moreover, it was purely a unilateral agreement without any express or proven consideration. On the death of the wife without children or descendants, the law fixes the transmission of the decedent's property to others, and such others have no vested interest therein till such death, and then only such as the law gives. The law gives the widower a one-half interest in all the wife's property at her death, whether real or personal, and her estate would lose nothing and plaintiff would gain nothing by converting her personal property into real estate. In no sense was the wife or her estate prejudiced by her purchase of this real estate in reliance on the promise or declaration, if made, that the plaintiff would claim no interest therein on her death, since the money or other property invested therein would be subject to the same claim.

While the interest which the statute, Section 319, Revised Statutes 1929, gives to the widower of the deceased wife is not called dower, yet the statutes create reciprocal rights of a widower in the property of the deceased wife and a widow in the property of the deceased husband. What would estop one to claim such right would estop the other. If in this case the husband had died owning this real estate and the wife was claiming one-half as his widow on facts similar to those here, no court would think of holding her estopped.

While appellants may not have complied in all respects with our rules as to making assignments of error and a statement of the case with points and authorities, we find no difficulty in understanding the matters for decision and overrule the motion to dismiss the appeal.

The judgment of the trial court is affirmed, and having learned that plaintiff has died since the submission of this cause to his court

on January 15, 1932, the judgment will be and is affirmed as of that date. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.